IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

NEAL BENJAMIN,

      **Plaintiff,**

v.                                                        Civil Action No. 2:18cv26
                                                         (Judge Bailey)

UNITED STATES OF AMERICA,

      **Defendants.**

## REPORT AND RECOMMENDATION

### I. Introduction

On March 15, 2018, the Plaintiff, acting *pro se* and presently confined at FCI Gilmer, in Glenville, West Virginia, filed a complaint pursuant to the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671, *et seq.*, and an Application to Proceed *in forma pauperis*, which has not yet been ruled upon. ECF Nos. 1 and 2. Also pending is the Plaintiff's Motion "Requesting Additions to be Added to Federal Tort Claim Pursuant to Fed. R. Civ. P. Rule 15(a) and (c)" [ECF No. 7] and a Motion for Preliminary Injunction.[1] ECF No. 9.

This matter is assigned to the Honorable John Preston Bailey, United States District Judge, and is referred to the undersigned United States Magistrate Judge for initial screening and to make a proposed recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

---

[1] The undersigned has not analyzed the Plaintiff's claim for a preliminary injunction, because in a FTCA action, relief is limited to money damages; equitable relief is not available under the FTCA. Peck v. Blessing, 2006 WL 213736 (N.D. Cal.); Alaj v. United States, 479 F.Supp.2d 501 (D.S.C. 2007).

## II. The Complaint

The Plaintiff makes one claim which alleges dental negligence/medical malpractice. ECF No. 1 at 9. In support of his claim, the Plaintiff alleges that Tiffany Smith, DDS ("Smith") diagnosed him on March 3, 2014, with periodontal disease and that tooth #32 was hopeless and must be extracted due to infection. Smith prescribed medication for the infection and then extracted the tooth on March 21, 2014. The Plaintiff maintains that the second finding of periodontal disease made by Smith was on April 4, 2015, following a seizure the night before in which the Plaintiff maintains that two teeth became loose. Smith found that teeth #24 and #25 were hopeless and must be extracted. The Plaintiff indicates that he refused the extractions because a "seizure [did] this once previously and they healed, and that was on December 15, 2014." Id. The Plaintiff continues by noting that he still has teeth #s 24 and 25 four years later.        The Plaintiff alleges that the third finding of periodontal disease made by Smith was on April 6, 2017, when he went to Dental Sick Call for gum infection and tooth pain. The Plaintiff alleges that Smith diagnosed tooth #19 as "periodontal hopeless" due to bone loss, prescribed medication for the infection and scheduled him for an extraction. However, after remembering that Smith had told him that teeth #s 24 and 25 were periodontal hopeless and still having the teeth three years later, he refused the extraction. The Plaintiff further maintains that the infection and pain went away. ECF No. 1 at 10. Therefore, the Plaintiff alleges that Smith's diagnosis regarding tooth #19 was inaccurate.

The Plaintiff continues by nothing that beginning in April of 2017, he complained to Mr. Weaver ("Weaver"), the medical administrator about Smith's findings concerning periodontal disease and her insistence upon pulling out teeth that were otherwise

healthy. ECF No. 1 at 10. He alleges that he requested to be seen by "an outside source" for a second opinion and reexamination of tooth #19 and others that were starting to cause him problems. The Plaintiff alleges that in response, Weaver said that all he could do was "put him in for an 'emergency' teeth cleaning with the understanding [he] would most likely 'lose' some teeth during the cleaning." ECF No. 1 at 11. The Plaintiff declined the treatment because he maintains that his reason for bringing the matter to Weaver's attention was with the intention of not losing any more teeth. Id. The Plaintiff then notes that he was required to sign a Medical Treatment Refusal form that removed all responsibility from the BOP. Id.

Finally, the Plaintiff alleges that from April 4, 2014, through April 6, 2017, he went without one scheduled treatment by dental staff at FCI Gilmer despite the kinds of danger or risk he would be facing by not having medical/dental treatment. The Plaintiff concludes by noting that Smith's failure on three occasions to schedule him with a BOP Dental Service Treatment planning examination after diagnosing periodontal disease shows negligence and medical malpractice. For relief, the Plaintiff requests a minimum of $1,000,000 dollars and an "injunction to be seen by a periodontist for an examination and dental care for persistent tooth problems caused by gum disease." ECF No. 1 at 15.

### III. Motion Requesting Additions to FTCA

On April 13, 2018, the Plaintiff filed a Motion requesting that additions be added to his FTCA. The Plaintiff indicates that he seeks to bring "new, supportive facts to his claim of negligence to provide proscrib [sic] timely treatment to his [Periodontal] Disease and unethical measures taken by FCI Medical Administration." ECF No. 7 at p. 1. Briefly summarized, the Plaintiff alleges that since 2014, Smith has failed to perform a

3

periodontal examination or an assessment of his periodontal condition using the Community Periodontal Index of Treatment Needs. The Plaintiff maintains that examinations and assessments would have revealed the beginning stages of periodontal disease of tooth #19 and other teeth and prevented the pain, infection and untreatable conditions he is now facing and loss of teeth. Additionally, the Plaintiff alleges that when he inquired of Weaver about a medication chip and other options, he was informed that the "BOP does not provide the advanced therapies that you are describing from Program Statement 6400.02." ECF No. 7 at p. 4. The Plaintiff alleges that Weaver made two false statements in that response. First, that the BOP does not provide for the advanced therapies that he was describing and second, that his periodontal disease appeared to have begun its progression and was in an advanced stage before he arrived at FCI Gilmer. As support for these allegations, the Plaintiff notes that PS 6400.03 addresses periodontal disease, and he also maintains that his A&O dental examination by LTJG Thompson, R.D.H.[2], on March 5, 2008, showed no periodontal disease findings. In conclusion, the Plaintiff argues that "(1) the 2014 [periodontal] finding and the delay of [Periodontal] Examinations or [CPITN] assessment has placed Tooth #19 and others in a untreatable Hopeless State; (2) [t]he question and reason for Mr. Weaver's 'falsehood' was to remove blame from FCI Gilmer for the delay in providing [Periodontal] Examination or Assessment Treatment." ECF No. 7 at p. 5.

---

[2] The undersigned believes that LTJG Thompson is most likely a commissioned officer of the Public Health Services and the initials R.D.H. appear to indicate that he/she is a Registered Dental Hygienist. The report the Plaintiff attached to his original complaint [ECF No. 1-8 at pp. 3-5], notes that the Plaintiff had poor oral hygiene and was observed to have bilateral mandibular tori which are bony outgrowths on the lingual surface of the mandible. In addition, it appears to establish that the Plaintiff was missing teeth #s 2, 15, 31, 18 and 17.

## IV. Standard of Review

Because the Plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. Courts must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, a complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute). The Supreme Court in Neitzke recognized that:

> Section 1915(d) is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Examples of the former class are claims against which it is clear that the defendants are immune from suit. . .

490 U.S. at 327.

The Federal Rules of Civil Procedure require only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78

S.Ct. 99 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

The Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1, 92 S.Ct. 594, 596 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007).  While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Haines, supra, at 520–21. "[T]he mandated liberal construction afforded to pro se pleadings 'means that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.'" Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir.1999). However, "judges are [ ] not required to construct a party's legal arguments for him." Small v. Endicott, 998 F.2d 411, 417 - 8 (7th Cir.1993).

Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. at 555 (2007).  Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570.  In Twombly, the Supreme Court found that "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570.  Thus, a plaintiff must state a plausible

6

claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

## V. Analysis

### A. Exhaustion of Administrative Remedies

The FTCA is a limited waiver of sovereign immunity. This waiver is subject to the condition that an administrative claim must first be submitted to the appropriate agency and denied before suit can be filed. See 28 U.S.C. 2675 (a). See also Bellamy v. United States, 888 F.Supp. 760 (S.D.W. Va. 1995). Filing a timely administrative claim is jurisdictional and cannot be waived. Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994) (citing Henderson v. United States, 785 F.2d 121, 123 (4thCir. 1986); Muse v. United States, 1 F.3d 246 (4th Cir. 1993). Therefore, before an inmate can bring a claim under the FTCA, the inmate must exhaust procedures specified at 28 C.F.R. §§ 14.1 to 14.115 and 543.30 to 543.32. The administrative process which inmates must exhaust when they have complaints under the FTCA is set forth at 28 C.F.R. §§ 14.1-14.11. To exhaust administrative remedies as required before filing an action under the FTCA, the inmate must first submit an administrative claim including a claim for money damages in the sum certain for the alleged injuries sustained on the Standard Form 95 to the Federal agency whose activities gave rise to the claim. Id. 14.2 (a) and (b)(1). After an investigation and examination and informal attempts at resolving the inmate's claims as the circumstances may require, Id. §§ 14.6 and 14.8, the agency may deny or approve the inmate's claim. If the agency denies the inmate's claim he may file suit in the District Court within six months of the mailing of the denial. Id., § 14.9 (a). The Director of the

Federal Bureau of Prisons is authorized to settle meritorious administrative Federal tort claims by providing monetary compensation. 28 C.F.R. §§ 0.9(k) and 0.172.

In the instant case, the Plaintiff filed an administrative tort claim that was received by the BOP on May 16, 2017, and was assigned claim number TRT-MXR-2017-04457. ECF No. 1-1 at p. 1. Although the Plaintiff has not provided a copy of his SF-95, the BOP's letter dated October 20, 2017, indicates that the Plaintiff alleged that his injury began in 2007. Because a tort claim against the United States is forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues, the BOP's letter indicated that any claims of denial of treatment from 2007 to May 16, 2015, were untimely. In addition, the letter indicated that for the treatment that occurred from May 16, 2015 forward, by his own admission, the Plaintiff had continually refused treatment by providers at FCI Gilmer. Furthermore, while the Plaintiff requested dental treatment in the community, the BOP found there was no indication that treatment by outside providers was warranted. Accordingly, the letter concluded by noting that the Plaintiff's claim was denied, and that the letter constituted a final denial of his claim. The letter notified the Plaintiff that if he was not dissatisfied with this determination, he had six months from the date of mailing of the letter to bring suit in the appropriate United States District Court. Id.

Having reviewed the complaint and the BOP rejection letter, the undersigned concludes that the Plaintiff exhausted his administrative tort claim as it relates to conduct by dental staff at FCI Gilmer up to the date his claim was received by the BOP on May 16, 2017. However, the Plaintiff's request to make additions to his FTCA should be denied as unexhausted. More specifically, the additional claims or allegations made

therein relate to interactions with Weaver beginning on May 19, 2017, and Smith in February of 2018, both after he filed his administrative tort claim. Therefore, the BOP was not given the opportunity to consider the Plaintiff's allegations regarding the CPITN guide or advanced periodontal therapy such as a medicated chip. Accordingly, the undersigned recommends that the Plaintiff's Motion [ECF No. 7] be **DENIED.**

### B. Failure to Satisfy the Requirements of the MPLA

The FTCA is a comprehensive legislative scheme by which the United States has waived its sovereign immunity to allow civil suits for actions arising out of the negligent acts of agents of the United States. The United States cannot be sued in a tort action unless it is clear that Congress has waived the government's sovereign immunity and authorized suit under the FTCA. Dalehite v. United States, 346 U.S. 15, 30-31 (1953). The provisions of the FTCA are found in Title 28 of the United States Code. 28 U.S.C. §§ 1346(b), 1402(b), 2401(b) and 2671-2680.

An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150 (1963). The FTCA provides at § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

However, the FTCA does not create a new cause of action. Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). "The statute merely "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Id.

9

In the present case, the Plaintiff alleges that the Defendants' negligent acts occurred in the State of West Virginia. Therefore, West Virginia State law applies.

To establish a medical negligence claim in West Virginia, the plaintiff must prove:

> (a) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death.

W.Va. Code § 55-7B-3.

When a medical negligence claim involves an assessment of whether or not the plaintiff was properly diagnosed and treated and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required. <u>Banfi v. American Hospital for Rehabilitation</u>, 529 S.E.2d 600, 605-606 (W.Va. 2000).

Additionally, under West Virginia law, certain requirements generally must be met before a health care provider may be sued. W.Va. Code §55-7B-6. This section provides in pertinent part:

> **§ 55-7B-6. Prerequisites for filing an action against a health care provider; procedures; sanctions**
>
> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.
> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity:

> (1) The expert's familiarity with the applicable standard of care at issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court. See Stanley v. United States, 321 F.Supp.2d 805, 806-807 (N.D.W. Va. 2004); see also Starns v. United States, 923 F.3d 34 (4th Cir. 1991) (holding West Virginia's medical malpractice liability cap applies to claims brought against the United States under the FTCA).

Although the general rule in medical malpractice cases in West Virginia requires expert witnesses, expert testimony is not required "where the lack of care or want of skill is so gross as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of law jurors by resort to common knowledge and experience." Farley v. Shook, 218 W.Va. 680, 629 S.E.2d 739 (2006). The MPLA provides as follows concerning claims "based upon a well-established legal theory of liability":

> Notwithstanding any provision of this code, if the claimant or his or her counsel, believes that no screening certificate of merit is necessary because a cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel, shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of the screening certificate of merit.

West Virginia Code § 55-7B-6(c). In Johnson v. United States, 394 F.Supp.2d 854, 858 (S.D.W. Va. 2005), the Court held that plaintiff's statement on his administrative claim

11

form alleging improper surgical implantation of a prosthesis satisfied the provisions of the MPLA permitting the filing of a claim without submitting a certificate of merit. Id. The Court reasoned that plaintiff's claim was based upon a well-established legal theory of liability and expert testimony was not required to show a breach of the standard care because plaintiff stated on his form that the surgeon "implanted the too large Prosthesis backward causing diminished bloodflow and subsequent Necrosis and infection." Id. at 858.

Unlike the facts in Johnson, the Plaintiff's allegations of negligence are complex and expert testimony is necessary. See O'Neil v. United States, 2008 WL 906470 (S.D. W. Va. Mar. 31, 2008) (finding that plaintiff was not excused from filing a screening certificate of merit because the treatment and diagnosis of Graves disease, hyperthyroidism, congestive heart failure, and cardiomyopathy, are not within the understanding of lay jurors by resort to common knowledge and experience); also see Giambalvo v. United States, 2012 WL 984277 *4 (N.D.W. Va. Mar. 22, 2012) (finding that Johnson "is a rare exception to the 'general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witness.'").

In the instant case, the undersigned finds that the Plaintiff's allegations of improper diagnosis and treatment of advanced periodontal disease and what constitutes timely treatment, risk factors, symptoms, possible side-effects, and appropriate treatment options are not within the understanding of lay jurors by resort to common knowledge and experience. Accordingly, the Plaintiff is not excused from filing a screening certificate of merit pursuant to West Virginia Code § 55-7B-6(c), and his FTCA complaint should be dismissed.

## VI. Recommendation

For the foregoing reasons, the undersigned **RECOMMENDS** that the Plaintiff's FTCA complaint be **DISMISSED WITHOUT PREJUDICE** for failure to comply with the MPLA. In addition, the undersigned **RECOMMENDS** that the Plaintiff's Motion for Leave to Proceed *in forma pauperis* [ECF No. 2] and Motion for Preliminary Injunction [ECF No. 9] be **DENIED AS MOOT**. Finally, the undersigned **RECOMMENDS** that the Plaintiff's Motion Requesting Additions to be Added to His FTCA [ECF No. 7] be **DENIED** for failure to exhaust his administrative tort remedies.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objections are made and the basis for such objections. A copy of any objections should also be submitted to the United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record by electronic means. Upon entry of this Report and Recommendation, the Clerk of Court is further **DIRECTED** to

terminate the Magistrate Judge association with this case.

    DATED: October 29, 2018

*/s/ James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE